# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-1392

RAYMOND E. DOUGLAS, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 10, 2009                                    Decided April 17, 2009)

*Robert Legg*, of Arlington, Virginia, was on the pleadings for the appellant.

*Rudrendu Sinhamahapatra,* with whom *John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Gayle E. Strommen*, Deputy Assistant General Counsel, all of Washington D.C., were on the pleadings for the appellee.

Before KASOLD, LANCE, and DAVIS, *Judges*.

KASOLD, *Judge*: Vietnam veteran Raymond E. Douglas appeals through counsel that part of an April 3, 2007, Board of Veterans' Appeals (Board) decision that denied his claim for disability compensation for diabetes mellitus because entitlement to presumptive service connection on the basis of exposure to herbicides including Agent Orange during his Vietnam service was rebutted by affirmative evidence to the contrary. For the reasons stated below, the decision of the Board will be affirmed.

## I. FACTS

Mr. Douglas served in the U.S. Marine Corps from September 1969 to June 1973. In 1976, he was diagnosed with Crohn's disease, which he does not assert is service connected. As part of his treatment for Crohn's disease, he took steroids, specifically Prednisone. Mr. Douglas applied for disability compensation for diabetes in November 2003. In support of his claim, Mr. Douglas submitted private records, including one from a Dr. Perhala that states that Mr. Douglas was

"beginning to experience significant issues with chronic steroid use. The issues foremost are his diabetic tendency . . . ." Record (R.) at 234. In April 2004, the Cleveland, Ohio regional office (RO) ordered a medical examination. The engagement memorandum states:

> Regarding the veteran's claim for diabetes mellitus type 2, his in country Vietnam service has been verified. The medical evidence the veteran provided with his claim shows he has an extensive history of steroid use due to his medical conditions. . . . Please provide an opinion with rationale as to whether the veteran's diabetes is due to his use of steroids.

R. at 979.

In response, two VA endocrinologists opined that Mr. Douglas's diabetes is more likely than not secondary to his chronic steroid use. R. at 1001, 1005.

## II. ARGUMENTS OF THE PARTIES

Mr. Douglas does not argue that the evidence obtained by the Secretary fails to rebut the presumption of service connection. Rather, he argues that the Secretary lacked the authority to develop the rebuttal evidence and/or, if he had the authority to develop such evidence, he did so in a matter that impermissibly suggested or requested an answer that would aid only in denying his claim. In support of his first argument, Mr. Douglas asserts that the Secretary developed this claim solely to rebut Mr. Douglas's presumptive-service-connection claim in violation of the Court's holding in *Mariano v. Principi*, 17 Vet.App. 305, 312 (2003) that "VA may not order additional development for the sole purpose of obtaining" unfavorable evidence. Appellant's Brief (App. Br.) at 9. In support of his second argument, Mr. Douglas argues that the VA engagement memorandum impermissibly requested that the VA examiners rebut his favorable medical opinion in violation of *Colayong v. West*, 12 Vet.App. 524 (1999).

The Secretary agrees that Mr. Douglas is prima facie entitled to the presumption of service connection for his diabetes, but he argues that he has the statutory authority and duty to gather evidence necessary to make a determination on a claim. Further, he argues that his requests for information and evidence did not compromise the fairness of the adjudication.

2

### III.  ANALYSIS

#### A.  Duty To Develop a Claim

##### *1.  The Secretary has broad authority to develop a claim.*

It is well settled that the Secretary has an affirmative duty to assist the veteran in developing evidence to substantiate a claim.  *See* 38 U.S.C. § 5103A; *see also McLendon v. Nicholson*, 20 Vet.App. 79, 85 (2006) ("[I]t is the Secretary who has the affirmative, statutory duty to assist the veteran in making his case.").  Contrary to Mr. Douglas's argument, however, this duty does not eviscerate the commensurate duty to otherwise properly develop the claim so that a decision may be made to award or deny the claim.  Although not explicitly stated in statute, the duty to properly develop a claim is inherent in the responsibilities of the Secretary to execute and administer the laws applicable to the Department of Veterans Affairs.  *See* 38 U.S.C. § 303; *see also Stegall v. West*, 11 Vet.App. 268, 271 (1998) ("It is the Secretary who is responsible for the 'proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department.'" (quoting section 303)).[1]

The duty to properly develop a claim is implicit also within a number of statutes governing the processing of claims.  For example, pursuant to 38 U.S.C. § 5107(b), the Secretary is required to "consider all information and lay and medical evidence of record," which necessarily implies the duty to secure information and evidence for the record in the first instance.  38 U.S.C. § 5107(b).  Moreover, the Secretary is required to weigh "positive and negative evidence regarding any issue material to the determination of the matter [and] give the benefit of the doubt to the claimant," which also impliedly and necessarily supports the conclusion that the Secretary is to gather all of the evidence, both positive and negative, that is material to rendering a decision on a claim.  *Id.*; *see also*

---

[1]Also not explicitly stated in statute, but inherent in the responsibilities of the Secretary, is the duty to protect the public fisc.  *See Brock v. Pierce County*, 476 U.S. 253, 259-60 (1986) (generally recognizing that public agencies by their very nature represent the public interest and, as such, have a duty to protect both the public fisc and the integrity of the government programs they represent); *Ribaudo v. Nicholson*, 21 Vet.App. 137, 152 (2007) (Schoelen, J., concurring in part and dissenting in part) (noting that the "Secretary plays the role of the guardian of the public fisc"); *Rhodan v. West*, 12 Vet.App. 55, 57, 58 (1998) (Holdaway, J., concurring) ("[I]t must be remembered that the Secretary is not merely representing the departmental interests, he is, in a larger sense, representing the taxpayers of this country and defending the public fisc from the payment of unjustified claims. . . . There is a duty to ensure that, insofar as possible, only claims established within the law are paid. The public fisc and the taxpayer must be protected from unjustified claims.").

*Ortiz v. Principi*, 274 F.3d 1361 (Fed. Cir. 2001) (quoting section 5107 and holding that the benefit of the doubt is not for application when the negative evidence outweighs the positive evidence).

Similarly, pursuant to 38 U.S.C. § 5106, heads of the Federal departments and agencies are required to provide the Secretary with such information as he requests "for purposes of determining the eligibility for or amount of benefits," which presupposes the Secretary's duty to make such an eligibility determination. 38 U.S.C. § 5106. And, eligibility is otherwise established by statutes that require veteran status, existence of a disability, a nexus between the veteran's service and that disability, the degree of disability and the effective date of the disability to establish a claim for service-connected disability compensation. *See Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (acknowledging the preceding elements as the five common elements of a veteran's application for benefits); *e.g.*, 38 U.S.C. §§ 1110 (establishing basic entitlement to wartime disability compensation), 1121 (establishing basic entitlement to wartime death compensation), 1131 (establishing basic entitlement to peacetime disability compensation), 1141 (establishing basic entitlement to peacetime death compensation).

Decisions of the Board also must be based "on the entire record . . . and upon consideration of all evidence and material of record and applicable provisions of law and regulation." 38 U.S.C. § 7104(a). The Federal Circuit has held that this statute does not "suggest that the VA should give more weight to a piece of evidence based solely on its source," reflecting, inter alia, that evidence in the record may come from multiple sources. *White v. Principi*, 243 F.3d 1378, 1381 (Fed. Cir. 2001).

Although statutes evince the implicit duty of the Secretary to develop all of the evidence relevant to making a decision on a claim, the Secretary's regulations are more explicit. Specifically, regulation requires the benefit of the doubt to be given to a claimant only when such doubt arises "after careful consideration of *all procurable* and assembled data." 38 C.F.R. § 3.102 (2008) (emphasis added); *cf. Ortiz*, *supra* (also quoting § 3.102 when holding that the benefit of the doubt is not for application when the negative evidence outweighs the positive evidence). Section 3.303 (a) of title 38, Code of Federal Regulations, directs that each disabling condition "must be considered on the basis of [inter alia] all *pertinent* medical and lay evidence" and that "determinations as to service connection will be based on review of the *entire evidence of record*") (emphasis added.).

4

38 C.F.R. § 3.303(a) (2008). Further, § 3.304 (c) of title 38, Code of Federal Regulations, states that "[t]he development of evidence in connection with claims for service connection will be accomplished when deemed necessary," although the regulation also cautions that development "should not be undertaken when evidence present is sufficient for this determination." 38 C.F.R. § 3.304(c) (2008); *see also Shoffner v. Principi*, 16 Vet.App. 208, 213 (2002) (stating that § 3.304(c) gives the Secretary "the discretion to determine how much development is necessary for a determination of service connection"); *Struck v. Brown*, 9 Vet.App. 145, 155 (1996) (38 U.S.C. § 5125 is "permissive in nature, although clearly it would not permit the Board to act in an arbitrary and capricious manner in not crediting a claimant's medical evidence"). The Secretary also has the authority to schedule a veteran for a medical examination, unless doing so would be arbitrary and capricious. *See Kowalski v. Nicholson*, 19 Vet.App. 171, 177 (2005).

Without doubt, the Secretary is required to procure evidence "in an impartial, unbiased, and neutral manner,"*see Austin v. Brown*, 6 Vet.App. 547, 553 (1994) ("[B]asic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner."), but there also is no doubt the Secretary has the authority to develop the claim, which includes the gathering of all information and evidence relevant and material thereto, positive and negative, sufficient to render a decision thereon.

 2. *The Secretary may develop evidence that might rebut the presumption of service connection.*

In line with the above discussion, we also find that the Secretary's authority to develop a claim necessarily includes the authority to collect and develop evidence that might rebut the presumption of service connection. Congress not only created a presumption of service connection for certain diseases and disabilities, it explicitly stated that the presumption was rebuttable. *See* 38 U.S.C. §§ 1112, 1113; *see also Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004) (clarifying burdens of proof related to presumptions of soundness and aggravation, implicitly recognizing that the Secretary, in order to rebut such presumptions, can and should gather evidence). Specifically, when, inter alia, "there is affirmative evidence to the contrary," the presumption created by section 1112 (among certain other statutory presumptions) "will not be in order." 38 U.S.C. § 1112.

Precluding the Secretary from gathering evidence that could rebut the presumption of service connection would yield the absurd result of converting the rebuttable presumption created by

5

Congress into a virtually unrebuttable presumption, except in those few instances where the claimant submitted the very evidence that rebutted the presumption. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) ("Some applications of respondents' position would produce results that were not merely odd, but positively absurd. . . . We do not assume that Congress, in passing laws, intended such results."); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) ("statutory construction that causes absurd results is to be avoided if at all possible"); *Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991) (noting the limited " 'absurd result' exception to the plain meaning rule"). Such a result would frustrate, if not render meaningless, the statutory mandate that the presumption "will not be in order" when there "there is affirmative evidence to the contrary." 38 U.S.C. § 1112; *cf. Kent v. Principi*, 389 F.3d 1380, 1383 (Fed. Cir. 2004) (noting with regard to the presumption of sound condition that the "presumption would be meaningless if [] conflicting evidence could not be considered" and rejecting a "per se rule barring rebuttal of the presumption"). This we cannot sanction. *See Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (" 'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure' " (quoting *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005))); *see also Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994) ("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary.").

### *3. General expressions must be read in context.*

In support of his argument that the Secretary is not permitted to develop evidence to rebut the presumption that his diabetes is due to exposure to Agent Orange during his service in Vietnam, Mr. Douglas relies heavily on the statement in *Mariano*, 17 Vet.App. at 312, that it "would not be permissible for VA to undertake such additional development if *a* purpose was to obtain evidence against an appellant's case." *Id*. (emphasis added). This single sentence, although rendered without further explanation, states a broad, general proposition, that was revisited by the Court in *Hart v. Mansfield*, 21 Vet.App. 505 (2007). *Hart* stated that additional development is not permitted "if *the* purpose was to obtain evidence against the claim," and further noted that if the evidence was insufficient to make a decision on the claim, then the Secretary was required to obtain a medical examination. *Id*. at 508 (emphasis added).

6

As Chief Justice Marshall noted long ago, general expressions must be taken in the context in which they were rendered. Specifically, he stated:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia*, 19 U.S. 264, 399-400 (1821). Our examination of *Mariano* reveals that its broad and general proposition, restated above, was noted in the context of rejecting a medical examination report because the examination was not conducted in substantial compliance with a Board remand order. *See Mariano*, 17 Vet.App. at 311-12; *see also Cohens*, *supra*. Accordingly, it must be taken in context and not applied broadly or without close examination.

Moreover, the fundamental inquiry during judicial appellate review is not the subjective intent of the individual adjudicator below at the time the medical examination report was requested but, rather, the objective necessity of gathering further evidence, and whether it was gathered "in an impartial, unbiased, and neutral manner." *Austin*, 6 Vet.App. at 553. Assuming arguendo that the subjective purpose of the VA adjudicator could be determined, it would not be controlling. Bad intent on the part of a VA employee in seeking additional evidence cannot lead to the grant of benefits that are not supported or otherwise authorized by law. *See OPM v. Richmond*, 496 U.S. 414 (1990) (holding that payments from the Federal treasury are limited to those authorized by statute and that erroneous advice given by a Government employee to benefits claimant did not estop the Government from denying benefits not otherwise permitted by law). This is not to say that the *Mariano* statement has no application. While it is well settled that on one hand the duty to assist is not a license to continue gathering evidence in the hopes of finding evidence to support the claim, *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992), the *Mariano* statement provides the corollary thereto: the duty to gather evidence sufficient to render a decision is not a license to continue gathering evidence in the hopes of finding evidence against the claim.

7

Ultimately, the Secretary is not vested only with the authority to gather evidence that might rebut the presumption in section 1112, he also has an affirmative duty to gather the evidence necessary to render an informed decision on the claim, even if that means gathering and developing negative evidence, provided he does so "in an impartial, unbiased, and neutral manner." *Austin*, 6 Vet.App. at 553. In this instance, the evidence submitted by the claimant reasonably raised an issue regarding the applicability of the presumption provided in section 1112. Specifically, this evidence raised the reasonable possibility that Mr. Douglas's disability resulted from an intervening cause that arose between service and the onset of the disability. Under these circumstances, which the Secretary explained was the basis for seeking another medical examination and opinion, it was not error for the Secretary to seek that additional medical examination and opinion.

### B. Engagement Memorandum

Implicit within Mr. Douglas's additional argument that the RO's engagement memorandum in this case was "tainted" because it was obtained for the sole purpose of rebutting the presumption of service connection is that the Secretary was not obtaining this information in an impartial, unbiased, and neutral manner. This argument is not supported by the record or the law. In *Colayong*, this Court held that a VA engagement letter requesting an examiner to "feel free to refute [a] private physician's report . . . w[as] fatally flawed in that 'a question may not suggest an answer or limit the field of inquiry by the expert.' "). 12 Vet.App. at 534-35 (quoting *Bielby v. Brown*, 7 Vet.App. 260, 268 (1994)).

The engagement memorandum in this instance had no such impermissible suggestion or limitation. Rather, it noted that Mr. Douglas's Vietnam service for presumptive-service-connection purposes had been verified and that further analysis was needed to rule out a potential alternate etiology of his diabetes, and asked the VA endocrinologists to "provide an opinion with rationale as to whether the veteran's diabetes is due to his use of steroids." R. at 979. Succinctly stated, the engagement memorandum did nothing more than ask for an opinion regarding a possible etiology that was reasonably raised by the evidence submitted by Mr. Douglas. In this regard, the Court observes that engagement letters cannot be prohibited from specifically identifying the adjudicator's concern. Without guidance, there is a great risk that the opinion produced will not address the issue of concern for the adjudicator. A request for a medical opinion is not impermissibly leading simply

8

because it raises a theory that might lead to the denial of the claim. Rather it is impermissible only if — when considered in toto — it communicates that the adjudicator wishes to receive a specific answer to the question posed. Accordingly Mr. Douglas's reliance on *Colayong* is misplaced and his argument fails.

## IV. CONCLUSION

Upon consideration of the foregoing, the Board's April 3, 2007, decision is AFFIRMED.