# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-4765

KATHY GARDNER-DICKSON, PETITIONER,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before GREENBERG, MEREDITH, and FALVEY, *Judges*.

# O R D E R

FALVEY, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

During the Vietnam era, Air Force veteran Herbert E. Dickson was stationed at the Korat Royal Air Force Base in Thailand. Years after service, he developed ischemic heart disease and filed a claim for VA disability compensation. He told VA that temporary duty had brought him near the perimeter of the base where herbicides were sprayed and to the flight line near aircraft that carried Agent Orange. Although VA presumes both herbicide exposure in certain veterans who served on or near the perimeters of military bases in Thailand and an etiological link between the presumed exposure and ischemic heart disease, it did not immediately grant the veteran's claim. Rather, on April 2, 2019, the Board of Veterans' Appeals (Board) remanded the matter for further evidentiary development.

Mr. Dickson promptly filed a motion for Board reconsideration and, when that was denied, he filed the petition that is before us today. Mr. Dickson unfortunately passed away during these proceedings, and his widow, Ms. Kathy Gardner-Dickson, has been substituted as the petitioner. The petition was denied in a single-judge decision because the petitioner had adequate alternative means to obtain the desired relief and had not shown that the petition was in aid of our jurisdiction. A motion for a panel decision was filed and the case was submitted to the panel, which heard oral argument on July 8, 2020.

We are asked to decide whether we should issue a writ ordering the Secretary to immediately withdraw the April 2019 Board remand and redecide the claim in accordance with the petitioner's view of the facts and law.[1] The petitioner also moves to certify a class of "[a]ll claimants who have received or will receive a Board . . . remand decision in whole or in part not in accordance with law." Motion for Class Certification at 2. The Secretary, who opposes the

---

[1] The specific request is for a "writ of mandamus ordering the Secretary to require the Board to recall its legally defective April 2, 2019, decision and immediately re-adjudicate the pending claims consistent with established legal standards and any other relief that the Court deems reasonable and appropriate," including "reasonable costs and attorney fees." Petition (Pet.) at 2.

motion for class certification, moves to dismiss or deny[2] the petition for lack of jurisdiction or failure to meet the requirements for a writ. Although we are sympathetic to Ms. Gardner-Dickson's plight, we must deny her petition because the requirements for entitlement to a writ have not been met.

## A. All Writs Act Authority

We have the authority to hear petitions and issue writs in aid of our jurisdiction. This authority stems from our inherent ability to manage court proceedings, *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962), and the All Writs Act (AWA), which enables courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017) ("The [AWA] unquestionably applies in the Veterans Court."). Thus, we may entertain Ms. Gardner-Dickson's petition, and we can grant it, if her requested relief is in aid of our jurisdiction. *See Monk*, 855 F.3d at 1318.

But, although we may issue writs of mandamus, we do not do so routinely. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976). Mandamus relief is not appropriate unless three conditions are met: (1) The petitioner must show a clear and indisputable right to the writ; (2) the petitioner must show the lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; and (3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004). The burden of showing entitlement to a writ of mandamus rests with the petitioner. *Erspamer v. Derwinski*, 1 Vet.App. 3, 9 (1990). As we explain, the petitioner has not met this burden.

## B. The Writ Sought Is Not in Aid of Our Jurisdiction

To start, the petitioner does not show that issuing a writ would be in aid of our jurisdiction. "'The court clearly has the power to issue writs under the [AWA] in aid of its prospective appellate jurisdiction in the face of action . . . that would frustrate such prospective appellate jurisdiction.'" *Erspamer*, 1 Vet.App. at 8 (quoting *Margolis v. Banner*, 599 F.2d 435, 440-41 (C.C.P.A. 1979)). The AWA "permits federal courts to fill gaps in their judicial power where those gaps would thwart the otherwise proper exercise of their jurisdiction." *Monk*, 855 F.3d at 1318. But, because the AWA "is not an independent basis of jurisdiction, . . . the petitioner must initially show that the action sought to be corrected by mandamus is within this court's statutorily defined subject matter jurisdiction." *Baker Perkins, Inc. v. Werner & Pfleiderer Corp.*, 710 F.2d 1561, 1565 (Fed. Cir. 1983); *see Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (noting that the AWA is a "residual source of authority").

Ms. Gardner-Dickson does not ask us to act in a manner that would aid our jurisdiction. As a VA benefits claimant whose claim could be the subject of a final Board decision, her case is

---

[2] The Secretary's motion seeks dismissal, but he clarified at oral argument that denial may be the more appropriate remedy. Oral argument (arg.) transcript (tr.) at 40:05-27.

within our prospective jurisdiction. *See Erspamer*, 1 Vet.App. at 8. But she does not ask us to act in aid of that jurisdiction. She wants us to conduct a substantive review of the 2019 Board remand order, find that it was wrong, and direct the Secretary to withdraw the order and adjudicate her husband's claim in accordance with her view of the law. This is a request for a merits ruling on a nonfinal Board decision. And, as explained below, we have no authority to address the merits of a Board order that has remanded a claim to the regional office (RO) for further development.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). More to the point, this court "is a creature of statute" and "can only act through an express grant of authority from Congress." *Burris v. Wilkie*, 888 F.3d 1352, 1357 (Fed. Cir. 2018). Section 7252 of title 38 states that our Court "shall have exclusive jurisdiction to review decisions of the Board." 38 U.S.C. § 7252(a). And, as we have explained, section 7252 is our sole source of jurisdiction. *Skaar v. Wilkie*, 32 Vet.App. 156, 180-81 (2019) (en banc order). Our jurisdiction "is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377. Thus, we focus our inquiry on whether it is within our jurisdiction to review the merits of the Board's remand order.

It is well settled that we have jurisdiction over Board decisions, and a nonfinal Board remand order is not a decision for purposes of section 7252. *Mote v. Wilkie*, No. 2019-2367, 2020 WL 5755475, at *3 (Fed. Cir. Sept. 28, 2020); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order) (holding that a Board remand that does not make a final determination with respect to benefits sought "does not represent a final decision over which this Court has jurisdiction").[3] This is because "[a] 'decision' of the Board, for purposes of . . . jurisdiction under section 7252, is the decision with respect to the benefit sought by the veteran: those benefits are either granted . . . , or they are denied." *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000). A Board remand that does not make a final determination about the benefits sought is "not a decision within the meaning of section 7252(a)." *Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1365 (Fed. Cir. 2005). Instead, we have "jurisdiction only when the appellant files a[n] . . . appeal from a final decision of the [B]oard." *Mayer v. Brown*, 37 F.3d 618, 619 (Fed. Cir. 1994), *overruled on other grounds by Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998); *see* 38 U.S.C. § 7266. Thus, we have "long held that [we] cannot hear interlocutory appeals or otherwise conduct appellate review of Board decisions that are not final, such as remands." *Young v. Shinseki*, 25 Vet.App. 201, 208 (2012) (en banc order) (Lance, J., dissenting); *see Adams v. West*, 13 Vet.App. 453, 454 (2000) ("Board[] remand is not a final decision ripe for review."), *aff'd sub nom. Adams v. Principi*, 256 F.3d 1318 (Fed. Cir. 2001). We may not craft a judicial expansion of section 7252 to circumvent binding precedent or the statute itself.

Likewise, we cannot accept the petitioner's invitation to find in 38 U.S.C. § 7261 a source of jurisdiction that would permit us to review the merits of nonfinal Board remand orders. The petitioner contends that we have such jurisdiction because section 7261(a)(2) authorizes us to "compel action of the Secretary unlawfully withheld or unreasonably delayed." But this statutory provision is not an independent grant of jurisdiction. As the Federal Circuit explained in *Mayer*,

---

[3] We note that the petitioner has suggested that we create an exception to or overrule *Breeden*. However, even if the Court were inclined to do so, it would be of no moment because decades of controlling precedent from the Federal Circuit explicitly preclude the result the petitioner seeks—our direct review of the merits of a nonfinal Board remand.

"[s]ection 7261 merely sets out the scope of the review to be conducted by th[is Court] in cases within its jurisdiction; it does not itself create jurisdiction." 37 F.3d at 620; *see Skaar*, 32 Vet.App. at 180-81 (noting that section 7261 "lays out our scope of review in cases in which we already possess jurisdiction under section 7252 and 'does not provide an independent basis for jurisdiction'" (quoting *Matter of Wick*, 40 F.3d 367, 371 (Fed. Cir. 1994))).

In short, a writ of mandamus is not an appropriate vehicle for us to review the merits of a Board remand order. Neither section 7252 nor section 7261 gives us the authority to review nonfinal remand orders, and we are not granted that authority by any other source. *See Baker Perkins, Inc.*, 710 F.2d at 1565. Moreover, the writ is not sought to aid our prospective review of a final Board decision—something within our jurisdiction—but instead seeks to enable direct review of something outside our jurisdiction—a nonfinal remand order. And "[i]t is well established that the AWA does not expand a court's jurisdiction." *Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998). So, we cannot grant the petitioner's request for direct review of the Board's nonfinal remand order. "[T]o grant the writ in such a case would be a plain evasion of the Congressional enactment that only final judgments be brought up for appellate review." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 30 (1943) (internal quotations omitted); *see Pennsylvania Bureau of Corr.*, 474 U.S. at 43; *Cox*, 149 F.3d at 1363.

Although the petitioner frames her request as a rare exception to section 7252, if we were to take her view of the law, every Board remand order would be reviewable in this Court. Ms. Gardner-Dickson may have a sincere argument that the Board's order is erroneous, but the same could be said for many VA claimants. We presume that few people come before the Board with the expectation that their case has no merit and the Board cannot grant them relief. It is unsurprising that they might be upset when VA determines that it needs additional evidence before finally deciding the claim. But that displeasure is not enough to allow us to review a nonfinal Board remand order. Congress has provided a means by which claimants adversely affected by VA determinations can receive appellate review, and we may not subvert that process simply because a claimant wishes it. *See Roche*, 319 U.S. at 30. And there would be no principled reason to review the Board's remand of the petitioner's claim yet decline to exercise judicial review in other cases.[4]

In making this determination, we acknowledge that our writ of mandamus authority provides us with a broad and flexible tool to use in aid of our jurisdiction. *See Mote*, 2020 WL 5755475, at *6 (noting that our Court "enjoys flexibility to fashion the appropriate relief in a given case"). But, we emphasize that, although Ms. Gardner-Dickson complains of undue delay, she does not ask us to do more to ensure that her case is moved along, for example, by ordering progress reports or imposing deadlines, or requiring adjudication of a claim that VA failed to process. In this regard, we recognize that her request for relief mentions a final Board decision, but she first wants us to determine, on direct review, that the Board's remand was "legally defective" on the merits and order the Board to withdraw its nonfinal order. Only then does she seek a final merits decision in accordance with her view of the established legal standards. Pet. at 2; *see* Motion for Panel Decision at 1 (describing the requested relief as requiring the Court to determine "whether a Board decision remanding a veteran's appeal based on a clear and obvious error of law is or is

---

[4] Nor is it clear how we could conduct such review—VA remands are not final decisions and, so, do not lay out the Board's full assessment of the evidence.

4

not directly reviewable by the Court" (emphasis omitted)). Rather than enable appellate review of a final Board decision, she would have our appellate Court step in and seize jurisdiction over a matter that is not yet ripe for our review.

But a writ of mandamus "cannot be used 'to actually control the decision of the trial court,'" particularly when our review of that decision could be obtained through the ordinary appeals process. *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 245 (1964) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)). Thus, we may not grant the petitioner's request to directly review the merits of the 2019 Board remand order and find that it should have adjudicated her claim on the merits. As we have explained, we lack the authority to carry out that review, and the AWA cannot expand our statutorily authorized jurisdiction. *See Roche*, 319 U.S. at 26; *Pennsylvania Bureau of Corr.*, 474 U.S. at 43; *Cox*, 149 F.3d at 1363. We therefore conclude that, because the petitioner does not show that "the action sought to be corrected by mandamus is within this court's statutorily defined subject matter jurisdiction," *Baker Perkins, Inc.*, 710 F.2d at 1565, the petition is not "in aid of [our] . . . jurisdiction[]" or "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Simply put, the AWA does not authorize us to act here.

C. No Unreasonable Delay

Next, a writ is not warranted because the petitioner has not shown that the Board remand has caused unreasonable delay. Ms. Gardner-Dickson alleges that the Board's remand order has relegated her claim to "appellate limbo" and caused its final adjudication to be unreasonably delayed. Pet. at 1. We would not tolerate unreasonable delay if it interfered with our eventual jurisdiction simply because VA called the delay a remand. *See Mote*, 2020 WL 5755475, at *4-6. There is some point at which a remanded claim has been languishing for so long or has received such poor attention that a writ or other remedy may be necessary to move it along in the adjudicatory process and bring it within the ambit of our jurisdiction. *Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018). This would include issuing a writ of mandamus to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2); *Martin*, 891 F.3d at 1343.

When delay is alleged as the basis for a petition, there is no "hard and fast rule with respect to the point in time at which a delay becomes unreasonable." *Martin*, 891 F.3d at 1346. Instead, the Court considers the following factors, originally set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*):

(1) the time an agency takes to make decisions must be governed by a "rule of reason";
(2) whether Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, which may supply content for this rule of reason;
(3) delays arguably reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the nature and extent of the interests prejudiced by delay; and

5

(6) impropriety or bad faith on the agency's part are not necessary to finding unreasonable delay.

*Martin*, 891 F.3d at 1344-45.

It is difficult to apply the *TRAC* factors here because, although the petitioner invokes them, she does not actually allege or point to evidence showing unreasonable delay in the adjudication of her claim. *See Cheney*, 542 U.S. at 381 (providing that the petitioner bears the burden of showing that entitlement to a writ is clear and indisputable); *see also Kerr*, 426 U.S. at 403. Her arguments are focused on what she perceives as the unreasonableness of the Board's remand order, not the time that VA has spent or will spend completing the Board-ordered development and adjudicating her claim. As stated, she does not ask us to do anything within our scope of authority to ensure that her case is moved along in the adjudicatory process or in the direction of a reviewable Board decision, and she has not contended that the processing of her claim post-remand has been too slow.[5] Rather, she objects to the RO working on her claim at all. Her request is for us to directly review the merits of the Board's nonfinal remand order, and, as we have explained, we lack jurisdiction to do so.

That said, we do not find, based on the facts and arguments presented by the petitioner, that the *TRAC* factors warrant granting her a writ. Even under that framework, she has not alleged or shown that VA's actions are unreasonable. Because we lack jurisdiction to review the merits of the Board's remand and the petitioner does not otherwise argue that the Agency has delayed fulfilling the Board-ordered development, she has not proffered any reason for us to conclude that, to the extent that the remand delayed an adjudication on the merits, the Board's actions are not governed by a "rule of reason." *See Martin*, 891 F.3d at 1345-46. Further, although we do not opine on the propriety of the Board's remand, we note that the Secretary has a statutory duty to obtain relevant records, 38 U.S.C. § 5103A, and we have held that the Secretary "has an affirmative duty to gather the evidence necessary to render an informed decision on the claim," *Douglas v. Shinseki*, 23 Vet.App. 19, 26 (2009); *see Martin*, 891 F.3d at 1346 (noting that the "rule of reason" analysis may consider "whether the delays are due in part to the VA's statutory duty to assist a claimant in developing his or her case"). Thus, the first *TRAC* factor does not support issuing a writ.

As for the second factor, the petitioner has presented no evidence to suggest that the Secretary is not fulfilling his duties in a timely manner. And Congress created this system, with its multiple steps for adjudication and duty to assist claimants in developing their cases, as well as an appellate structure withholding judicial review of VA's decision-making until a final Board decision is rendered. Its choice to design an adjudicatory system with those features shows both that the second *TRAC* factor supports the Secretary and that VA's actions here fit within the rule of reason. *See Martin*, 891 F.3d at 1346.

The fourth *TRAC* factor also weighs against the petitioner. This factor requires the Court to assess how granting a writ would impact VA's administrative activities, which may include

---

[5] The Court notes that, if the petitioner wishes to complain that VA has unreasonably delayed adjudication of her claim—apart from challenging the propriety of the Board's remand order—nothing in this order precludes her from filing a petition for a writ of mandamus compelling VA to act.

considering potential detriment to "other applicants who have filed claims for benefits." *Martin*, 891 F.3d at 1347. Here, the petitioner alleges that requiring the Board to issue a decision granting or denying benefits "could not possibly have a significant impact on other VA activities," and that it is the Board's unnecessary remand that is adversely impacting the Agency's resources. Pet. at 7. But for this factor to weigh in the petitioner's favor, we would have to accept the premise that the Board improperly remanded the claim for additional development. Further, directing the Board to decide the claim now runs the risk of unnecessary rework at the Agency if her premise ultimately proves incorrect and the Board did in fact require additional evidence to properly decide the claim. On the other hand, even if the petitioner is correct that the evidence before the Board was enough to grant benefits, under the law relevant to Mr. Gardner's claim, the effective date of an award of benefits would be the date of the claim or the date entitlement arose, both of which would presumably predate any development undertaken after the claim was remanded. *See* 38 U.S.C. § 5110(a)(1).

As to the sixth factor, it is merely a caution that impropriety need not be present to find that delay was unreasonable. Although the petitioner has not alleged bad faith and the Court finds none, the Court has nevertheless duly considered this caution.

Thus, if the *TRAC* factors apply, we find that the petitioner has not shown that they favor issuing a writ. Even if the third and fifth factors weigh in the petitioner's favor, the other factors weigh strongly against her. In short, the petitioner has not demonstrated unreasonable delay, and, as discussed herein, she is not without an adequate alternative remedy. *See Cheney*, 542 U.S. at 380-81.

### D. The Appeals Process Provides an Alternative Avenue of Relief

Further, a writ is not warranted because the regular appeals process provides the petitioner with adequate alternative means to obtain her requested relief. The petitioner essentially asks us to address the merits of her husband's claim for benefits and find that the Board erred in determining that it could not award benefits based on the current record. But she may obtain that relief by simply participating in the appeals process already available to her.

At oral argument, the Secretary informed the Court that the claim remanded by the Board is being processed by VA. *See* Oral arg. tr. at 35:30-36:34. On remand, the RO may well agree with Ms. Gardner-Dickson that her husband was entitled to benefits. If the RO does not, and Ms. Gardner-Dickson is dissatisfied with the decision that the RO issues on her claim, she can appeal that matter to the Board and, then, to this Court. The petitioner does not argue that this process is proceeding too slowly or cannot give her the final grant of benefits that she seeks. Rather, she apparently does not wish to participate in the regular appeal process because she believes resort to mandamus could provide an award of benefits sooner or because facts found on remand could undermine her claim.[6] We are sympathetic to her frustration with the Board's remand decision but find that this is not an appropriate circumstance for issuance of a writ.

---

[6] As a practical matter, it is not clear that an appeal to this Court would be a faster way to obtain an award of benefits. Our scope of review is limited, and it does not include the authority to conduct our own fact finding in order to grant benefits. *See* 38 U.S.C. § 7261.

"Ordinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed or to review an appealable decision of record." *Roche*, 319 U.S. at 27-28. As the Supreme Court has explained, although "hardship is imposed on parties who are compelled to await the correction of an alleged error at an interlocutory stage by an appeal from a final judgment, . . . . such hardship does not necessarily justify resort to certiorari or other . . . extraordinary writs." *U.S. Alkali Exp. Ass'n v. United States*, 325 U.S. 196, 202 (1945). "'[E]xtraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.'" *Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002) (quoting *Bankers Life & Cas. Co.*, 346 U.S. at 383). Even when obtaining a final decision from the adjudicator below would be inconvenient, this

> inconvenience is one which we must take it Congress contemplated in providing that only final judgments should be reviewable. Where the appeal statutes establish the conditions of appellate review an appellate court cannot rightly exercise its discretion to issue a writ whose only effect would be to avoid those conditions and thwart the Congressional policy.

*Roche*, 319 U.S. at 30.

Thus, the petitioner's preference for an alternate means to appeal does not warrant issuance of a writ of mandamus. *See id.* at 26 ("[W]hile a function of mandamus in aid of appellate jurisdiction is to remove obstacles to appeal, it may not appropriately be used merely as a substitute for the appeal procedure prescribed by the statute."). The AWA does not authorize us to "issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Corr.*, 474 U.S. at 43.

None of the exceptions to that rule apply here. The petitioner does not contend that an appeal would be a futile or useless act. *See Wolfe v. Wilkie*, 32 Vet.App. 1, 39 (2019) ("Practical futility in terms of an administrative process can make a formal remedy insufficient and amount to a useless act."). She notes no regulatory interpretation or action by the Secretary that would discourage her participation in the normal appellate process. *See id.* at 24. Nor does she suggest that her husband's claim is not being processed below or that the Secretary is refusing to issue an appealable decision.[7] *See Erspamer*, 1 Vet.App. at 10-11. And she makes no contentions of system-wide delay or repeated Board remands. *See Martin*, 891 F.3d at 1345.

We cannot see how any extraordinary harm will come to her if she participates in the ordinary appeals process or why that process cannot provide her requested relief. When asked at oral argument why she could not simply appeal, her counsel noted his suspicion that the Board would not issue a decision promptly, but he has presented no evidence to support that suspicion and, as noted above, the petition itself does not actually allege delay in the adjudication of the remanded claim. *See* Oral arg. tr. at 17:18–19:38. We find that the alleged delay that the petitioner objects to is the ordinary delay in undergoing the regular appeal process. Although the Court

---

[7] Because she makes no contention that the Secretary's actions after the 2019 Board remand have delayed the processing of her claim, we see no need to ask the Secretary to explain the status of that claim.

understands her frustration with that process, we will not issue a writ as a substitute for an appeal. *See Lamb*, 284 F.3d at 1384.

## E. There Is No Clear Right to a Writ

Finally, the petitioner does not show a clear and indisputable right to a writ. Her contention is that, because the Board in 2019 remanded her husband's claim for verification when the matter could have been decided based on Mr. Gardner's lay testimony, the Board's decision was a prohibited search for negative evidence. We agree with the petitioner that it "would not be permissible for VA to undertake . . . additional development if a purpose was to obtain evidence against an appellant's case." *Mariano v. Principi*, 17 Vet.App. 305, 312 (2003); *see Hart v. Mansfield*, 21 Vet.App. 505, 508 (2007). Yet, as we clarified in *Douglas*, the Secretary also "has an affirmative duty to gather the evidence necessary to render an informed decision on the claim, even if that means gathering and developing negative evidence, provided he does so 'in an impartial, unbiased, and neutral manner'." 23 Vet.App. at 26 (quoting *Austin v. Brown*, 6 Vet.App. 547, 553 (1994)). Thus, contrary to the petitioner's suggestion, there is no rule prohibiting remand just because negative evidence might be developed. *See* Pet. at 5-7 (arguing that, because the Board's remand was a prohibited search for negative evidence, the decision itself caused unreasonable delay under the "*TRAC* standard" set out in *Martin*). Rather, under *Mariano* and *Douglas*, the Board errs when the record shows bias, partiality, or some other kind of malfeasance or bad intent in obtaining evidence under the duty to assist. *Douglas*, 23 Vet.App. at 26-27.

Because the petitioner's petition was filed before VA undertook the Board-ordered development, it is too early for us to determine whether the remand was a biased and prohibited search for negative evidence under *Mariano* and *Douglas*. In both cases, the appellants challenged final Board decisions, and we reviewed evidence obtained after the claims had been remanded. *See Douglas*, 23 Vet.App. at 25-26; *Mariano*, 17 Vet.App. at 312-13. Here, however, it is merely speculative to suppose that any evidence obtained on remand will amount to negative evidence; it could be favorable. Thus, we cannot review, as we did in *Douglas*, whether the Secretary's actions were impartial, because those actions have not yet occurred. And there is no record on which to base that review.[8] *See* 38 U.S.C. § 7252(b) ("Review in the Court shall be on the record of proceedings before the Secretary and the Board."). Nor could we perform our statutory duty to assess the record for prejudice. *See* 38 U.S.C. § 7261(b)(2). "As an appellate court, 'we are a court of review, not of first view.'" *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). Simply put, the petitioner cannot yet show a clear and indisputable right to a writ based on her asserted error in the Board's 2019 remand. It is too soon for us to make that determination. *See McKart v. United States*, 395 U.S. 185, 193-94 (1969) (noting that "it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based" and apply the agency's expertise before court intervention).

Thus, because Ms. Gardner-Dickson's petition is not in aid of our jurisdiction, she has adequate alternative means to obtain her requested relief, and she does not show a clear and

---

[8] We would note, however, from the limited information here, that the veteran requested several times that VA obtain records verifying the conditions of his service. *See* Petition, Exhibits D-E (Apr. 2017 and Oct. 2017 Notice of Disagreement and Substantive Appeal submitted through current counsel).

indisputable right to a writ, we will exercise our discretion to deny her petition for a writ of mandamus. *See* 28 U.S.C. § 1651(a); *Kerr*, 426 U.S. at 403 ("[I]ssuance of [a] writ is in large part a matter of discretion with the court to which the petition is addressed."). And, because she is not entitled to a writ, neither is the putative class; our denial of the petition on the merits moots the class motion.[9] Finally, because we have heard and decided this matter, the Secretary's motion to dismiss the petition will be dismissed as moot.

Upon consideration of the above, it is

ORDERED that the Court's October 15, 2019, single-judge order is withdrawn. It is further

ORDERED that the petition is DENIED. It is further

ORDERED that the petitioner's motion for class action and the Secretary's motion to dismiss the petition are dismissed as moot.

DATED: October 21, 2020

GREENBERG, *Judge, dissenting*: I dissent. I agree with the frequently expressed sentiments of the late Justices Ruth Bader Ginsburg and William J. Brennan Jr. in the matter of dissents.

> Dissents speak to a future age. It's not simply to say, "My colleagues are wrong and I would do it this way." But the greatest dissents do become court opinions and gradually over time their views become the dominant view. So that's the dissenter's hope: that they are writing not for today, but for tomorrow.

*Ruth Bader Ginsburg and Malvina Harlan*, https://www.npr.org/templates/story/story.php?storyId=1142685 (timestamp 3:50-4:05); *see also* William J. Brennan, *In Defense of Dissents*, 37 HASTINGS L.J. 427, 427-35 (1985).

From the earliest days of the Republic, Congress has one way or another focused on invalid pensioners or veterans. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L. Ed. 436 (1792).[10]

---

[9] We also stress that "class actions before this Court are the exception, not the rule." *Skaar*, 32 Vet.App. at 196. Here, even assuming the class motion was not rendered moot, we would not be inclined to address it on the merits. *See* Oral arg. tr. at 38:58-39:10 (Secretary's counsel noting that the petitioner provided only a single sentence addressing each of the Rule 23(a) requirements). Just as an appellant is expected to "plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments," *Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam), *vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order), so too should a proponent of a class action proceeding provide adequate support for a motion seeking class certification, including the Rule 23(a) requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

[10] Justice Ruth Bader Ginsburg, during her time as Professor at Rutgers Law School from 1962 to 1973, used *Hayburn's Case* as important evidence of the role of the federal judiciary. So did Justice Anthony Scalia at the United States Court of Appeals for Veterans Claims April 2013 Judicial Conference. He made specific reference to the importance of *Hayburn's Case* in the jurisprudence of the Court. *Supreme Court Press Release for Ruth Bader*

Indeed, Justice Ginsburg expressed the view of the majority of the Supreme Court that this Court has the power to properly construe remedial statutes in a veteran-friendly light. *See Scarborough v. Principi*, 541 U.S. 401, 411-19 (2004). The majority here should have considered this philosophy in deciding whether to issue the writ in this case.

Mr. Dickson served in Thailand at Korat Air Force Base during the Vietnam War era. He submitted a statement that while temporarily assigned to the 388th Fighter Wing's supply operation, he worked close to the perimeter of the base. The veteran also provided a supply authorization pass that he argued provided access to three buildings near the perimeter of the base. On April 2, 2019, the Board remanded the veteran's claim for service connection of multiple cardiac conditions based upon exposure to herbicides while he was stationed in Thailand, because the Board found that "the record contains no evidence contradicting the Veteran's reports." Petition at Exhibit G, p 2. Rather than being granted benefits based on uncontroverted evidence, the veteran died while VA delayed adjudicating his claim by remanding for additional evidence. This could not be what Congress intended when it enacted legislation providing benefits based on herbicide exposure. *See* 38 U.S.C. § 1116; *see also Procopio v. Secretary of Veterans Affairs*, 913 F.3d. 1371 (Fed. Cir. 2019) (expanding application of section 1116 to include the territorial waters of the Republic of Vietnam).

The Board's attempt to remand the claim to determine further facts is to gather nothing but negative evidence. The Board and our Court had the power and sufficient evidence to issue the necessary remedy there and the writ here. *See* 38 U.S.C. § 5103A*,* 28 U.S.C. § 1651(a); *see also Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017) ("The [AWA] unquestionably applies in the Veterans Court."). In *Wolfe v. Wilkie*, 32 Vet.App. 1 (2009), we issued a writ even though the petitioner had the ability to appeal the matter to the Court. The circumstances here are similar in that regard and equally as egregious. This is illustrative of systemic legal errors that can be corrected in the context of a petition. *See Mathis v. Shulkin*, 137 S. Ct. 1994, 1995 (2017)(Sotomayor, J., concurring) (noting the continuing "dialogue over whether the current system for adjudicating veterans disability claims can be squared with VA's statutory obligations to assist veterans in the development of their disability claims."); (Gorsuch, J., dissenting) ("Congress imposed on the VA an affirmative duty to assist—not impair—veterans seeking evidence for their disability claims."). The conduct of VA here is certainly emblematic of a systemic, bureaucratic disorder, which we are uniquely ordained to deal with. We should have done so here.

The entire congressional scheme is intended to remediate the plight of veterans and is consistent with the fundamental notion of statutory construction that Congress could not have possibly foreseen every eventuality, leaving certain things for the Secretary of Veterans Affairs to implement as the head of an administrative agency and for this Court to ultimately interpret. After all, we are acting as if we were an Article III court when reviewing administrative agency actions. *See Henderson ex rel. v. Shinseki*, 562 U.S. 428 (2011); *see also James v. Shulkin*, 29 Vet.App. 127, 130-31 (J. Greenberg, dissenting) *vacated and remanded by James v. Wilkie*, 917 F.3d 1368

*Ginburg's Death*, https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_09-18-20; *see also Justice Scalia Headlines the Twelfth CAVC Judicial Conference*, http://www.cavcbar.net/Summer%202013%20VLJ%20Web.pdf (referencing *Hayburn's Case* and noting that "veterans are favored by a unique canon of interpretation") (last visited Sep. 23, 2020).

(Fed. Cir. 2019)(citing *Henderson* when noting the need for flexibility in applying rules in the uniquely pro-claimant arena of veterans benefits law).

> Dissent for its own sake has no value . . . . However, where significant and deeply held disagreement exists, members of the Court have a responsibility to articulate it. . . . Unanimity is not in and of itself a judicial virtue. . . . Judges have no power to *declare* law. Courts *derive* legal principles and have a duty to explain *why* and *how* a given rule has come to be. . . . [Judges] are forced by a dissent to reconsider the fundamental questions and rethink the result . . . . In my judgment . . . the unique interpretive role of [our Court] with respect to the Constitution [and our authority] demands some flexibility with respect to the call of stare decisis. . . . [We should not be] captive to the anachronistic view of long-gone generations. . . . The right to dissent is one of the great and cherished freedoms by reasons of the excellent accident of our American births.

37 HASTINGS L.J. at 427-35 (1985).[11]

There is more than enough evidence here for the Board to have granted service connection based on herbicide exposure. The Board's decision to remand this matter, in order to obtain additional, and impliedly negative evidence, is an exercise of "naked and arbitrary power." *See Yick Wo v. Hopkins*, 118 U.S. 356, 366 (1886) (Matthews, J.). I would have granted a writ here and ordered the Secretary of Veterans Affairs to award the widow service connection based on Agent Orange exposure in Thailand. For this reason, I dissent.

---

[11] Justice William J. Brennan practiced law in New Jersey, served in the United States Army during World War II, served on the Superior Court of New Jersey from 1949 to 1951, and served on the Supreme Court of New Jersey until 1956 when he was nominated as a recess appointment by President Eisenhower. Justice Brennan also expressed his strongly held view of veterans as a unique class of litigants, while adhering to customary notions of constitutional and statutory construction. *See Johnson v. Robison*, 415 U.S. 361 (1974). Long before our Court was created by Congress in 1988, Justice Brennan recognized that there was no bar to consideration of a veteran's constitutional claims. *Id.* at 367.