IVERS, Judge, filed the opinion of the Court. FARLEY, Judge, filed a concurring opinion in which STEINBERG, Judge, joined in substantial part. STEINBERG, Judge, filed a dissenting opinion.
IVERS, Judge.
The veteran appeals the February 12, 1999, decision of the Board of Veterans’ Appeals (BVA or Board) that denied entitlement to service connection for cardiovascular disease. The Court’s jurisdiction to review this matter is established by 38 U.S.C. § 7252.
I. FACTS
Veteran Shoffner served in the U.S. Army from September 1970 to February 1972. Record (R.) at' 14. His service medical records (SMRs) show that he was hospitalized and treated as an outpatient, on three separate occasions over approximately two consecutive months, for bilateral pneumonia with pleural effusion (fluid in the fining around the lungs) (R. at 27-28); and for mycoplasma pneumonia (most common form of primary atypical (irregular) pneumonia) with eosinophifia (staining of cells or structures); both of unknown etiology (R. at 31-33). See DoRLANd’s Illustrated Medical DICTIONARY [hereinafter DoelaNd’s] 531, 1307, 1317, 160, 563 (28th ed.1994). His discharge physical profile record following his final hospitalization included the notation “resolving viral syndrome.” R. at 38, 43.
The veteran filed a claim for service connection for pneumonia 4 years after his discharge. R. at 60-63. The VA regional office (RO) responded with a rating decision and letter to the veteran, which informed him that he had a service-connected disability, residuals of pneumonia, but that it was not compensable because no residuals were indicated on his discharge examination in January 1972. R. at 71-73. The record does not contain any evidence that the veteran appealed the RO decision.
In August 1984, the veteran suffered a myocardial infarction. See R. at 192. The report of a consulting physician includes an impression of atherosclerotic heart disease, status post acute inferiolateral wall myocardial infarction, and a Wenckebach heart block (type of irregular heart beat). Id.; see DoRland’s 208. In April 1992, after receiving a diagnosis of ischemic car-diopathy (deficiency of blood supply to heart), the appellant underwent a heart transplant. R. at 164-66; see Dorland’s 269, 861.
In October 1995, in support of a claim for service connection for his heart condition, the veteran submitted letters from three private physicians, each variously opining that, if the veteran’s in-service pneumonia had been viral, it was possible that his heart condition was related to the pneumonia. R. at 255-57. In January 1996, the RO requested a VA medical examination for “Diseases of the Heart; Non TB Diseases/Injuries.” R. at 407. The request is reproduced as a one-page document in the record on appeal, with a section for general remarks that stated as follows: “Cardiomyopathy, resulting in heart transplant, claimed as secodnary [sic] to pneumonia in service. Heart and pulmonary specialist, please, to review CPFile, including service meidcal [sic] records and letters from current MDs. Give opinion as to etiology of the vet’s cardiom-yopathy, as well as rationale.” Id.
The first of two separate VA examinations concluded that, if the veteran’s in-service pneumonia had been viral, it could have contributed to his heart condition. R. at 409. The second did not draw a definite conclusion, but observed a history of severe viral syndrome in the 1970s, leading to post-viral cardiomyopathy. R. at 412.
*211 A January 1996 RO decision denied service connection for cardiovascular disease. R. at 417-19. The reasons and bases section of the RO decision noted the suggestions by the veteran’s three private physicians of a hypothetical link between his in-service pneumonia and his cardiomyopa-thy. R. at 417. The reasons and bases section did not reference the later VA examination, but stated the following concerning the first VA examination, conducted by a doctor named Pickering:
The examiner opined that there is no doubt that the veteran’s 1971 pneumonia may have been viral in nature, although this is impossible to document at this time. If it was indeed viral in nature, then it could easily have been a contributing factor to the development of viral cardiomyopathy. While viral infection of the cardiac muscle can result in an indolent process terminating in fatal car-diomyopathy, there will be no residual physical factors which would prove or disprove that hypothesis. The examiner further stated that it was unclear how the idea of repeated myocardial infarc-tions along with bypass grafting and angioplasties can relate to a purely viral cardiomyopathy.
R. at 418.
Shortly after the RO decision was issued, the veteran filed a Notice of Disagreement (NOD). R. at 421. During the adjudication that followed the NOD, one of the veteran’s private physicians submitted three additional letters. R. at 449, 503, 536. In the first and third letters, the physician opined that the veteran’s viral cardiomyopathy was related to the pneumonia that he had had while serving in Vietnam. R. at 449, 536. The second letter stated that the veteran’s condition was “probable mycoplasma induced car-diomyopathy in addition to severe atheros-clerotic coronary disease and an ischemic cardiomyopathy.” R. at 503.
In June 1997, the RO sent a letter to the private physician asking him to clarify the etiology of the veteran’s heart condition. R. at 549; see R. at 552. The record does not include evidence of a response from the physician. In October 1997, the RO sought “an opinion by a specialist in tropical diseases and by a specialist in diseases of the heart” (specialist’s opinion) regarding the etiology of the veteran’s heart condition. R. at 560-62. A summary of the veteran’s relevant medical history was included in the general remarks section of the request, with more detail than that in the January 1996 request for a VA medical examination. See R. at 407, 561-62. The 1997 request, in pertinent part, was as follows:
(1) What is the most likely diagnosis of the type of pneumonia the veteran had in 1971?
(2) [The veteran’s private physician’s] opinion seems to invert the progression of the veteran’s heart disease. The evidence shows the progression of ASHD from the [sic] 1984 on whith [sic] car-diomyopathy and congestive heart failure developing later prior to the time of the heart transplant. Do the physicians see any evidence of a cardiomyopathy at the time of the early treatment in 1984 and 1985? Or did it develop later? And if so what is its cause? Is it as likely as not that the arteriosclerotic heart disease first diagnosed in 1984 is due to the bout of pneumonia in 1971 or it is [sic] more likely to be due to toher [sic] independent causes? Any opinion, one way or the other, must assess the factual situation in regard to the pneumonia in 1971, the absence of heart problems until 1984, and the diagnosis of ASHD in 1984, and later developments.
R. at 561-62.
A specialist physician from the VA outpatient clinic in Columbus, Ohio, provided *212 the responding opinion, which concluded that the veteran’s cardiomyopathy was due to ischemia that occurred after his myocardial infarction, and that his pneumonia had not caused the cardiomyopathy. R. at 557-58, 565. The RO then issued a Supplemental Statement of the Case reiterating its prior denial of service connection. R. at 564-73.
In February 1998, the veteran, noting more than one conclusion as to the etiology of his heart condition, requested that the Board obtain an independent medical opinion (IMO). R. at 575-76. The Board requested the IMO in a letter that provided relevant factual detail concerning the veteran’s in-service pneumonia and subsequent heart conditions. R. at 596-597. The letter sought an opinion concerning “the issue of an etiological relationship between pneumonia and cardiomyopathy.” R. at 597.
The Board noted, in the February 1999 decision presently on appeal, that the IMO provider “reviewed the complete claims file and extensive medical records, as well as appropriate medical literature and references.” R. at 6-7. The resulting IMO concluded that the veteran had an ischemic cardiomyopathy due to coronary atherosclerosis, with no evidence of any type of cardiomyopathy prior to his acute inferior lateral myocardial infarction in August 1984, with its clinical appearance on that date; and that the veteran had not had nonischemic cardiomyopathy or a chronic viral myocarditis. R. at 600-06.
After considering the IMO and all the evidence in the record, the Board concluded that the preponderance of the evidence was against the veteran’s claim for service connection for his heart condition. It is that conclusion that the veteran now appeals.
II. ANALYSIS
The Board’s determination that the veteran’s heart condition is not service connected was a factual finding, which the Court cannot overturn unless it was “clearly erroneous.” See Swann v. Brown, 5 Vet.App. 229, 232 (1993); Wood v. Derwinski, 1 Vet.App. 190, 192 (1991). Under the “clearly erroneous” standard, “if there is a ‘plausible’ basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them.” Gilbert v. Derwinski, 1 Vet.App. 49, 53 (1990). While this case involves much factual evidence from several different sources, in particular the medical evidence, the Court finds that there is a plausible basis for the Board’s conclusion that the evidence preponderates against the veteran’s claim for service connection.
The Board stated that it had reached its conclusion after “weighing competing medical opinions.” R. at 7. As indicated in the preceding summary of the facts in this case, the record before the Board included medical opinions from several VA and non-VA physicians. The Board noted that the final IMO, obtained at the request of the veteran, was more probative than the opinions of the veteran’s private treating physicians. Id. The Board pointed out that the IMO included comments concerning the prior opinions of the private and VA physicians. R. at 9.
The veteran has argued that the medical evidence before the RO at the time of its 1996 decision affirmatively supported his claim for service connection. Appellant’s Brief (Br.) at 11. The veteran would have the Court characterize the medical evidence as conclusive regarding etiology, and reverse the Board’s decision. The remedy of reversal, however, is only appropriate when “ ‘[t]here is absolutely no plausible basis’ for the BVA’s decision and where *213 that decision ‘is clearly erroneous in light of the uncontroverted evidence in the appellant’s favor.’ ” Hicks v. Brown, 8 Vet.App. 417, 422 (1995) (quoting Hersey v. Derwinski, 2 Vet.App. 91, 95 (1992)) (emphasis added).
The Court has found that there is a plausible basis in the record for the Board’s denial of service connection. The Court cannot find, as the veteran urges, that the medical evidence in the record at the time of the 1996 RO decision was conclusively in favor of service connection. The Board discussed this medical evidence, and found that it was “inconclusive as to the etiological relationship between the [veteran’s in-service] pneumonia and [his] cardiomyopathy.” R. at 7. Nothing in the evidence of record refutes these findings. The question of whether the evidence was uncontroverted is not relevant because the evidence was not conclusive.
The veteran argues that the Secretary unlawfully overdeveloped the veteran’s claim by seeking medical opinions beyond those that were before the RO for its 1996 decision. Appellant’s Br. at 11-15. This argument is without the support of law, contrary to the veteran’s assertions otherwise. He contends that the language of 38 C.F.R. § 3.304(c) limits VA’s development of evidence. In fact, that language gives VA the discretion to determine how much development is necessary for a determination of service connection to be made. 38 C.F.R. § 3.304(c) (“The development of evidence in connection with claims for service connection will be accomplished when deemed necessary.” (Emphasis added)).
Furthermore, the RO complied with its statutory duty following receipt of the veteran’s NOD. See 38 U.S.C. § 7105(d)(1); 38 C.F.R. § 19.26. That is, the RO took “such development or review action as it deem[ed] proper under the provisions of regulations not inconsistent with this title.” 38 U.S.C. § 7105(d)(1). After receiving different letters from one of the veteran’s private physicians, and finding inconsistent information in those letters concerning the etiology of the veteran’s heart condition, the RO sought clarification from the private physician. See R. at 449, 503, 536, 549, 552. Receiving no response from the private physician, the RO sought a VA specialist’s opinion concerning etiology. See R. at 557-62.
The veteran acknowledged in his brief that the law allows for an RO to request an IMO when a claim involves medical complexity or controversy. See Appellant’s Br. at 13; 38 U.S.C. § 5109; 38 C.F.R. § 3.328. Although the specialist’s opinion that the RO sought was not an IMO, because it was provided by a VA physician, it was sought to clarify a question of etiology left open by the non-VA medical evidence of record. Whether an IMO is needed is left to the Secretary’s discretion. 38 U.S.C. § 5109(a). Similarly, the Board has discretionary authority to request an IMO. 38 U.S.C. § 7109(a); see 38 C.F.R. § 20.901(d).
The veteran has argued that both the RO request for a specialist’s opinion and the Board’s request for an IMO were tainted because of certain details provided in the request letters. Although this argument was not discussed in the Board decision, it is relevant to the issue on appeal, i.e., whether the Board correctly denied service connection, and the Court will address the argument in the first instance. See Maggitt v. West, 202 F.3d 1370 (Fed.Cir.2000).
The Court finds that the Board’s silence concerning the RO letter requesting a specialist’s opinion was not arbitrary or capricious. See 38 U.S.C. § 7261(a)(3). The RO made the request after the veteran *214 had submitted an NOD. At that point in the processing of the veteran’s claim, the RO exercised its statutory authority in deeming it proper to issue a request for a specialist’s opinion. See 38 U.S.C. § 7105(d)(1); 38 C.F.R. § 19.26. The Secretary has not promulgated a regulation governing requests for a VA specialist’s opinion, but has done so for RO requests for IMOs. See 38 C.F.R. § 3.328(b) (request must be submitted in writing and must set forth in detail the reasons why the opinion is necessary). Although the Court could draw a parallel between the regulatory provisions for requesting an IMO and the request for a specialist’s opinion in this case, we need not address that issue to resolve this appeal.
Whether the RO’s request for a specialist’s opinion was tainted, as the veteran has alleged, or not tainted, the only outcomes for the veteran at that time would have been (1) a grant of service connection following the RO’s second look, or (2) the transfer of his case to the Board for a decision concerning his appeal. See 38 U.S.C. § 7105(d)(1). The latter occurred, and the Board requested an IMO, which it ultimately relied upon as the basis for its conclusive decision concerning the veteran’s claim for service connection. Assuming, arguendo, that the RO request for a specialist's opinion was tainted, the resulting opinion was not a decisive factor in the Board’s decision. The Court must proceed, then, to determine whether the Board’s request for an IMO was tainted, as the veteran argues it was.
A letter from the Board requesting an IMO must “fully and accurately reflect! ] the disability picture, including both objectively demonstrated disabilities and subjectively claimed pain or other disability.” Bielby v. Brown, 7 Vet.App. 260, 268-69 (1994).
“If the engagement letter fails to set forth all of the claimant’s impairments, both objective and subjective, or fails to set forth any other relevant factual detail, such as the time period during which symptomatology manifested itself, the [independent medical expert] cannot render an opinion which is supported by a sufficient prior review of and plausible basis in the record.”
Id.; see 38 U.S.C. § 7109(a); 38 C.F.R. § 20.901(d).
The Court notes the Board’s finding that the IMO it had requested was a “clear and unequivocal opinion,” the basis for which included a review of each of the veteran’s physician’s opinions. R. at 7. Based on the Board’s factual findings concerning the IMO, and the requirement that a letter requesting an IMO consist of sufficient detailed information, the Court concludes that the Board did not act in an arbitrary or capricious manner by issuing the letter requesting an IMO. See 38 U.S.C. § 7261(a)(3).
The veteran has alleged further that the Board should have returned his claim to the RO to seek further comments from two VA doctors who examined him when he initially submitted his claim. Appellant’s Br. at 19-21. He argues that this action is' required pursuant to 38 C.F.R. § 4.2, which he asserts obliged the RO to return the doctors’ reports for clarification. Appellant’s Br. at 20.
The regulatory provision relied upon by the veteran is inapplicable for this appeal. The provision appears in the part of the regulations governing evaluation of service-connected disabilities for appropriate compensation. See 38 C.F.R. § 4.1. The veteran’s appeal involves a denial of service connection, and his underlying claim had not reached the threshold of part 4 of the regulations. Cf. Barela v. West, 11 Vet.App. 280, 283 (1998) (question of ser *215 vice connection is separate and distinct from question of compensation).
Finally, the Secretary has argued that a remand is required in this case, in light of “the Court’s decision in [Holliday v. Principi, 14 Vet.App. 280 (2001)], which interpreted the provisions of the Veterans Claims Assistance Act of 2000, Pub.L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA).” Secretary’s Br. at 17-20. The veteran has replied to this argument by stating that while he “does not dispute that, if the Court does not reverse, then a VCAA remand is appropriate, it is his position that the Court may not grant a VCAA remand in lieu of addressing and deciding the legal errors properly presented for review in the [veteran’s] principal brief.” Appellant’s Reply Br. at 12.
Before the issuance of this opinion, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) issued two decisions relevant to whether a VCAA remand is required for the present appeal. See Bernklau v. Principi, 291 F.3d 795 (FedCir.2002); Dyment v. Principi, 287 F.3d 1377 (Fed.Cir.2002). In each decision, the Federal Circuit held that the sections of the VCAA codified at 38 U.S.C. §§ 5102, 5103, and 5103A, concerning notice and assistance VA is to provide to claimants, are not retroactively applicable to proceedings that were complete before VA and were on appeal to this Court or the Federal Circuit when the VCAA was enacted. See Bernklau, supra.
The Board decision on appeal in the present case was issued on February 12, 1999, almost two years before the November 2000 enactment of the VCAA. The Court concludes, therefore, that a remand for the Board to consider the matters on appeal in light of the sections of the VCAA codified at 38 U.S.C. §§ 5102, 5103, and 5103A is not required. See Bernklau and Dyment, both supra. The remaining sections of the VCAA are not implicated in this appeal. In particular, the appeal does not raise issues regarding well groundedness or the benefit-of-the-doubt doctrine. See, e.g., 38 U.S.C. § 5107; see generally Dela Cruz v. Principi, 15 Vet.App. 143, 148-49 (2001) (finding that VCAA did not change benefit-of-the-doubt doctrine); Luyster v. Gober, 14 Vet.App. 186 (2000) (recognizing that VCAA required remand for readjudication if claim had been denied as not well grounded).
The Court holds that the Board’s denial of service connection for the veteran’s heart condition was not “clearly erroneous.” See Swann, Wood, and Gilbert, all supra. The Court is satisfied that the Board has provided adequate reasons or bases in support of its decision. See 38 U.S.C. § 7104(d); Gilbert, 1 Vet.App. at 56-57.
III. CONCLUSION
Accordingly, upon consideration of the oral argument, and of the record and the pleadings filed for this appeal, for the reasons stated herein, the February 12, 1999, BVA decision is AFFIRMED.